UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANNY A. CHARLES and CYNTHIA L. CHARLES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:08-cv-0428-RLY-JMS |
| QUALITY CARRIERS, INC. and KRISTINE M. RICHARDS, | ) ) ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION IN LIMINE TO EXCLUDE TESTIMONY
OF DR. GARY MISAMORE**

Defendants, Quality Carriers, Inc. ("Quality Carriers") and Kristine M. Richards ("Richards") (collectively "Defendants"), move to preclude Plaintiffs' expert, Gary M. Misamore, M.D. ("Dr. Misamore"), from testifying in the trial of this matter. Dr. Misamore opines that the vehicular accident, which is the subject of this case, was the cause of Plaintiff, Danny Charles' ("Charles"), injuries. For the reasons stated below, the court **DENIES** Defendants' motion.

**I.  Background**

On April 25, 2006, Charles and Richards were driving eastbound on I-74 in Franklin County, Indiana. Charles was driving a box truck in the left lane, and Richards was operating a semi-tractor pulling a tanker trailer in the right lane. At or near where the accident occurred, road construction was taking place, and as a result, traffic in the right

1

lane was required to merge into the left lane. As Richards approached the lane closure for the right lane, she attempted to merge into the left lane. In doing so, Richards' trailer collided more than once into the side of Charles' truck, which caused Charles to fight the steering wheel to keep it from going into a ditch. Charles alleges that as a result of the accident, his right rotator cuff was injured.

## II.     Standards Governing Expert Testimony

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Civil Procedure and the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Federal Rule of Evidence 702 ("Rule 702"), provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

Before admitting expert testimony, *Daubert* requires that the district court function as a gatekeeper to ensure that expert testimony is both relevant and reliable. *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000). "In other words, as a threshold matter 'a district court is required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue.'" *Id.* (quoting *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 590 (7th

Cir. 2000)).

In ascertaining whether an expert's opinion pertains to scientific knowledge, the court must consider whether the methodology employed by the expert in reaching his or her conclusion is sufficiently grounded in the "methods and procedures of science." *Daubert*, 509 U.S. at 590. This inquiry ensures that the expert's testimony is based upon more than just "subjective belief or unsupported speculation." *Id*. The court's role as gatekeeper is strictly limited to an examination of the expert's methodology. *Smith*, 215 F.3d at 718. "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Id.* (citing *Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.")).

### III.    Dr. Misamore's Qualifications and Opinion

Dr. Misamore is a board certified orthopaedic surgeon who specializes in shoulder injuries and has practiced in Indianapolis for twenty-five years. (Curriculum Vitae of Dr. Misamore ("Misamore CV"); Deposition of Dr. Misamore ("Misamore Dep.") at 5). He is a clinical associate professor of orthopaedic surgery at the Indiana University School of Medicine, and a consultant to the Indianapolis Colts. (Misamore CV). He is a reviewer for the Journal of Shoulder and Elbow Surgery, Journal of Bone and Joint Surgery, and Journal of the American Academy of Othopaedic Surgery. (*Id.*).

Dr. Misamore first saw Charles on August 28, 2007. (Expert Report of Dr.

Misamore ("Misamore Report") at 1). At that time, Charles was fifty-five (55) years old. (Misamore Dep. at 42). Charles reported that he had been in a vehicular accident in April 2006, and that following that accident, he had had persistent trouble with his shoulder. (Misamore Report at 1). A MRI scan showed a tear of the rotator cuff. (*Id.*). On January 12, 2007, Dr. Tennenbaum performed surgery on his rotator cuff, but Charles did not recover satisfactorily, which is why he eventually went for a consultation with Dr. Misamore. (*Id.*). A MRI scan revealed a retear of the rotator cuff. (*Id.*). Charles elected to undergo surgery once again, under the care of Dr. Misamore, on January 29, 2009. (*Id.*).

Dr. Misamore testified that Charles' injury occurred as a result of him holding onto the steering wheel during the collision. (Misamore Dep. at 44). Dr. Misamore explained that the type of collision Charles was involved in may not tear an otherwise healthy rotator cuff, but could tear a rotator cuff with degenerated tendons. (*Id.* at 46-48). When questioned as to whether Charles had a degenerated rotator cuff at the time of the accident, Dr. Misamore answered:

> A:   There's no way to state that with any confidence, but I would suspect that was the case.
> Q:   Why would you suspect that?
> A:   Because I've dealt with so many people like Mr. Charles before. So I'm playing the odds. He didn't have a violent injury. He didn't get ejected from the vehicle. He was a sideswipe. Very typically in this situation somebody just fights the steering wheel suddenly/violently in an accident, that's enough to tear a rotator cuff, but only if that rotator cuff is already in a weakened condition. So with that kind of an insult, it would be very hard to tear a normal rotator cuff. It would usually take much more force to do it, a tear in a normal

>tendon. So I'm assuming he had a degenerative rotator cuff tendon prior to that insult.

(*Id*. at 47-48). Dr. Misamore also posited that Charles may have had a rotator cuff tear prior to the accident, but the tear had never been symptomatic:

>[A] better way to state it is either his symptoms from the rotator cuff tear came on at that time or the rotator cuff tear occurred at that time. So there's no way to know if he had a previous tear that was asymptomatic and this injury made it symptomatic or whether this was the tear, this is the time that it occurred. I don't know how I can sort that out."

(*Id*. at 50-51). Dr. Misamore's opinion is based upon Charles' account of the vehicular accident and his post-accident symptoms, his "25 years of experience with knowing how rotator cuff tears occur, what the symptoms are . . . plus common sense." (*Id*. at 67). He explained:

>The guy had no previous symptoms by history. He had a relatively normal shoulder until he has a vehicular accident. At that point he has symptoms consistent with a rotator cuff injury; subsequently he has documentation that he has a rotator cuff tear. I'm going to link all those things together by common sense. I don't know how I could come to any other conclusion.

(*Id*. at 68-69).

**IV.   Discussion**

Defendants attack Dr. Misamore's qualifications to give an opinion on medical causation because "he lacks the necessary training to perform the examination and measurement of the forces involved in the collision and he further lacks the training necessary to apply these elements to a kinematic study of how Mr. Charles' body moved

5

inside the vehicle so as to create the mechanism necessary to impart the alleged injury." (Motion in Limine at 6). Defendants' argument places the bar for medical expert testimony much too high. Indeed, taking Defendants' argument to its logical conclusion, no doctor would ever be qualified to give medical causation testimony unless he or she was also qualified in the field of accident reconstruction or the like. The court therefore finds that Dr. Misamore, in his capacity as an orthopaedic surgeon with more than twenty-five years of experience treating rotator cuff-type injuries for patients like Charles, is qualified to give such an opinion.

Defendants also argue that Dr. Misamore's methodology is unreliable because he based his causation opinion on the subjective medical history offered by Charles and the temporal connection between the accident and Charles' onset of symptoms. (*Id*. at 7). This argument was raised and rejected in *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008 (7th Cir. 2000).

In *Cooper*, plaintiff fell in a drainage ditch while working at a construction site. *Id*. at 1011. Plaintiff claimed that the fall caused his chronic pain syndrome ("CPS"), and sought the admission of medical testimony from three medical professionals, including a specialist in internal medicine and two board certified neurologists, to that effect. *Id*. at 1012. The medical professionals' opinions that the fall caused the plaintiff's injuries were based exclusively on the plaintiffs' "own statements to the physicians that he had fallen in 1992, that before his fall he had been healthy, and that after his fall his physical condition had deteriorated." *Id*. The district court determined that the medical professionals'

6

testimony was inadmissible under *Daubert* because they had an inadequate foundation for evaluating the cause of plaintiff's injury. *Id*.

On appeal, the Seventh Circuit reversed, finding that the defendant was suggesting an "overly demanding gatekeeping role for the district court." *Id*. at 1020. The Court found that the purpose of the rule announced in *Daubert* "was to make sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Id*. Citing Rule 703 of the Federal Rules of Evidence for the proposition that an expert may rely on material reasonably relied upon by experts in their particular field, the Court noted that the physicans' reliance on patient history for diagnosis and treatment is permissible. *Id*. The fact that plaintiff's CPS may be attributable to a factor other than the fall, and the fact that plaintiff's medical history may not be accurate, are not grounds for exclusion; rather, such subjects are best left to meaningful exploration on cross-examination. *Id*. at 1021. "The proper method of attacking evidence that is admissible but subject to doubt is to cross-examine vigorously, to present contrary evidence, and to give careful instructions on the burden of proof." *Id*.

For the same reasons as those articulated above, Dr. Misamore may testify as to medical causation based upon the medical history provided by Charles and the temporal connection between the accident and the onset of symptoms in Charles' shoulder. Defendants are free to explore the weaknesses of his opinion, including the possibility of other factors which could have contributed to Charles' rotator cuff injury, on cross-examination.

## V. Conclusion

For the reasons set forth above, the court finds that Dr. Misamore is qualified to give an opinion on medical causation, and that his methodology is sound. His opinion is therefore admissible. Accordingly, Defendants' Motion in Limine to Exclude Testimony of Dr. Gary Misamore (Docket # 58) is therefore **DENIED**.

**SO ORDERED** this  25th   day of February 2010.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Christopher M. Barry
CRAIG KELLEY & FAULTLESS
cbarry@ckflaw.com

David W. Craig
CRAIG KELLEY & FAULTLESS
dcraig@ckflaw.com

Scott Anthony Faultless
CRAIG KELLEY & FAULTLESS
sfaultless@ckflaw.com

Robert R. Foos
LEWIS WAGNER, LLP
rfoos@lewiswagner.com